Good morning, Your Honors. Mr. Weisbrod. Stephen Weisbrod, Weisbrod, Mateus, and Copley. I'm here with Shelley Calland on behalf of Danielle Rennenger, Amy Rauch, Robin Drake, Heather Miller, and Tammy Ackleson. They endured horrible sexual harassment working at a warehouse and call center in Iowa. They won millions of dollars in judgments only to have their judgments go entirely unpaid, even though the toys that the companies they worked for had been selling are still being sold by the same people. Thank you for giving them their first opportunity to speak to a court about the merits of their RICO case. The main issue I want to address today is the direct injury proximate cause issue, which was the foundation of Judge Ebinger's decision. Plaintiffs can satisfy the Supreme Court's directness requirement or proximate cause requirement under civil RICO because they were the immediate victims of the criminal scheme and their injuries were not merely after effects of injuries suffered by others. The women were the... The government not have a claim for fraudulent custom forms? Yes, part of the claim is a claim that customs forms were manipulated to create misleading information and that is not... Did that give rise to a claim by the government? That could give rise to a claim by the government to the Supreme Court's decision in Bridge where there were false submissions to the government and the Supreme Court held that the proximate cause requirement was satisfied. Wouldn't it be... I was just wondering, wouldn't a claim by the government be in the nature of an avoided tax, evaded tax rather? Would that be the claim? The government could assert for customs form fraud, both claims based on reduced customs and false statement claims and penalties. Our clients' claims are not derivative of those claims at all. Our clients are not claiming anything about taxes. They're not claiming any harm that the government could claim. So when you look at Holmes in the animating purposes behind the proximate cause and directness test, there are three purposes and our clients satisfy all of the concerns. In other words, their claims do not raise them. Those three concerns are under Holmes, is the harm ascertainable? Yes, it is. It's the unpaid judgments. Is there an allocation problem between various people claiming the same damages? No, there isn't. And who has the incentive to sue? The answer is in a judgment evasion scheme that the people whose judgments were evaded have the main incentive to sue. The government also could have sued on the customs form part, but not for the same damages, totally different damages. I want to emphasize something about Holmes that I think got lost in the district court's opinion in the briefing. Holmes imposed a direct injury requirement, but it acknowledged that the broker-dealers would have had standing. So SIPIC, the Securities Investment Protection Corporation, serves two roles. It wears two hats. One is to appoint trustees, kind of like a bankruptcy trustee. Everybody in that case agreed that the trustees for the broker-dealers would have been able to assert proper RICO claims based on market manipulation activity. In other words, activities involving false statements to the SEC or to other investors. Did you say standing? Is that a standing point you're making? The cases refer to standing and injury. Those kind of get combined, meaning that everybody agrees that the trustees of the broker-dealers could have sued under RICO, could have established injury. And you don't have to just take my word for that interpretation. It's footnote 8 in Holmes, but also in subsequent decisions, the court actually said, in HEMI, the court said the broker-dealers could have sued under RICO and established direct injury based on the market manipulation conduct of the wrong-doers that SIPIC, as an insurer of customer accounts, could not assert. And I think that that key point about Holmes has gotten completely lost in all of the briefing here. Holmes actually said, like Bridge, that statements to other people, fraudulent statements to other people, in Holmes it was statements to the market, in Bridge it was statements to the Cook County seller of liens, that those can constitute a direct, a basis for a direct injury claim by someone to whom the statements were not made. It's black-letter law. Sorry. What about the district court's focus on Aquawood? Isn't Aquawood the only judgment debtor remaining? Aquawood is one judgment. The other judgment debtors include Manly Toy Direct and Toy Network, and I think they've been dissolved. Their successor, MGS, was also dissolved, although it is appealing in another case to the 8th Circuit. But Aquawood is definitely still in business, as far as I know. And the district court focused in on that fact to say there was not sufficient evidence in the record to indicate that Aquawood owned the toys that were coming through Customs, had any kind of control over them. What do we do with that conclusion? First of all, that's not entirely supported by the record. The court just didn't look at the evidence on that. What did the district court overlook? There were statements by Aquawood referring to our toys and so on. But Aquawood unquestionably, undeniably received commissions on toy sales. Aquawood had revenue stream derived from these activities. Does that take it then one step further, though, away from the moment of the Customs forms, false statements? It takes it a little bit farther, but not much. You don't need to show to establish a judgment evasion scheme actionable under RICO that a particular box of toys could be seized or a particular bank account. In none of the cases, if you go through Your Honor's own decision in Handeen, I'm referring to Judge Arnold, in a decision written by both Arnold judges and Judge Gibson, there wasn't that level of specificity of exactly what would have been seized by whom and when. It was sufficient to show that the activities of the wrongdoers increased the costs of the plaintiffs, the judgment holders, and that in addition, it likely reduced the available assets to be recovered. And we clearly showed that. So for Aquawood, Aquawood was in a business, it received income from doing that business in the form of commissions, and then they hid it. When you say doing that business, I feel like I need a little more specificity because we've got the false statement as saying it's Dollar Empire, right? And Dollar Empire does not own these toys. We have that. And I want to stress, we have a lot of predicate acts. Both of our claims, one for basic RICO violations and one for conspiracy, both survived. And under clear Eighth Circuit law, since both claims survived, you can offer new evidence and new theories as developed in the course of discovery. Both claims that we actually asserted survived. And many cases have said that you're not stuck with the precise theory that you assert. But that said... So you're talking about the bankruptcy theory, the fraud theory, and the obstruction of justice theories? I'm talking about the bankruptcy theory, the fraud theory, including the asset parking by Aquawood, which was discovered in discovery. In other words, Aquawood was putting its money, even PPP loan money, up into Swift Harvest's bank account so nobody could access it. On that point, since you've sort of pivoted to the ruling that the district court made, which was already dismissed those, that a motion to dismiss staged those theories, what if you had had separate RICO claims based on the separate theories? Say your first one is on the customs forms, but two and three are on bankruptcy and obstruction of justice, say. And the district court dismissed two and three. Wouldn't those be out of the case? And not available at summary judgment any longer? That is not how RICO is pled. RICO is pled based on a pattern. So you couldn't plead it that way? It's not typically pleaded that way. I'm not saying that it would be Rule 11 to plead it that way. But I am saying that typically, in all of these judgment evasion scheme cases, all of which went the judgment scheme plaintiff's, the victim's way, except for Judge Ebinger's decision, in all of these, there are multiple theories of moving assets. And they're pled as different predicate acts in support of claims under 1962C and then claims under 1962D. And those survived. And then you take discovery. It's just like any fraud case. If you survive the motion to dismiss, you take discovery, and then at summary judgment and at trial, you present the evidence of fraud that you have after taking the depositions. After consulting with the expert witnesses. Did you let the district court know, say, hey, we know you dismissed this bankruptcy fraud theory under RICO. Hey, we've got new evidence of this at summary judgment stage. So look at it again. Did you present it to the court in that way? We presented it to the court. We said that we were allowed to do so because both claims survived. We did not move to amend our complaint. We did not have to. You don't seem to have argued with the dismissal order. You don't say one of the districts got it wrong, do you, in your brief? The dismissal order was based on allegations. The judgment against us from which we appealed was based on evidence. We believe that the judgment was erroneous because we were allowed to present the evidence under clear aid circuit law. But we did not attack, we did not list in the orders appealed the dismissal. I understand that. Because it's kind of moot since by the time we got here, we were allowed to present evidence and we didn't. I understand your argument. Thank you. Now, I do want to emphasize one other thing. There are a couple of recent cases that go the plaintiff's way in the Supreme Court of the United States that are very helpful. One is Yeg Yuzarian, and that says that the RICO injury occurred in California, so it counted as domestic. The defendants say, well, that's not really about injury. That's about just domestic or foreign. Not so. Our interpretation of Yeg Yuzarian was confirmed in a subsequent Supreme Court case. Yeg Yuzarian was 2023 in medical marijuana. In 2025, the Supreme Court said, we analyzed the nature of injury. And we found that the injury in Yeg Yuzarian was in California. The injury in Yeg Yuzarian is virtually identical to the kind of injury alleged here. I'd like to reserve the remaining six and a half minutes for rebuttal. Thank you. Thank you. I may please the court. My name is Michael Curry, and I represent six defendants in this case that we refer to as the Hong Kong defendants, Samson Chan, Alan Chan, Lisa Liu, Toy Quest Limited, Bonsai International Limited, and Park Lane Solutions. I, too, want to focus on the proximate cause issue in this case. I'm sorry, Counselor. Could you speak up just a little, please? I'm having difficulty hearing you. I apologize. I also want to talk about proximate cause at issue in this case. Generally speaking, proximate cause, for a plaintiff to prove proximate cause, it's sort of like skipping a stone across a pond. The more times you need that stone to land, the more difficult, at least for somebody like me, is to make that actually happen. In the United States Supreme Court, with respect to proximate cause in RICO cases, has said that you only get one chance. You don't get to try to skip the stone five times. You get one shot, and you either land it and it makes it to the other side, or you're sunk. With respect to the causal chain in this case, that the plaintiffs need to land every single time to succeed, I think it's helpful to review that quickly. So first of all, the predicate act at issue in this case is a falsified customs form. Had the customs form been filled out in a manner in which the plaintiffs claim it should have been filled out, then the plaintiffs would need to show that a third-party service provider published that customs form, that they would have discovered this customs form, and it would have contained information about the location of goods in the United States. But because that customs form does not list Aquawood as the consignee, or the entity to which these products were going to be delivered, and it doesn't list them as the consignor, or the owner that was shipping them, the next step is that the plaintiffs would need to hire counsel, and they'd need to initiate some type of legal proceeding in the jurisdiction where the products are located, and allow them to be seized. Do you agree with your colleague on the other side that there is some evidence that Aquawood was connected to these products, either as owner or having some kind of control over them? Some evidence. I think we would agree that the Hong Kong defendants, my clients and Aquawood, have had a long business relationship. But the evidence that Aquawood was an owner, or that they were the intended recipient of the products, no, I think that's lacking. I think that the only way that the plaintiffs would be able to prove that is by pursuing alter ego claims and succeeding. And those were dismissed, correct? The alter ego claim was dismissed at 26? They were in this case. But in the hypothetical chain that they're trying to establish, that they need to establish to prove proximate cause, we're still in this la-la land of them locating products someplace in the United States, initiating a proceeding, pursuing an alter ego claim to show that the true consignor, or where the products need to be delivered, was not, in fact, Dollar Empire in California, but under the plaintiff's theory, MGS International in Indianola, Iowa. And then showing that MGS is, in fact, an alter ego of Aquawood. And there's more. I mean, then they would need to show that there's a market for these products, that there's a retailer. Bonsai water slide products come branded as bonsai. And if you were to seize those products, you have to go find a retailer for them. Is that part of the chain? I mean, that's just sort of what you could actually get from the products you seize. Now you're talking about the value, which doesn't seem like an extra step. It's just, well, I've gotten a levy on these products that really were owed in the form of our judgment. Oh, and they're just not worth as much. But I don't know if that's an extra step. Well, their claim is that the false claims form resulted in their inability to collect on their judgment. To collect on their judgment, this entire process, the seizing the assets, storing the assets, selling them, that entire process, which they necessarily would have to do for this causal chain to make any sense, requires that all of those costs, the legal proceeding costs, the storage costs, the feed to the auctioneer who sells them to whomever, would exceed the value they would ultimately get for those products for them to apply any of that profit to their judgment. And so as you can see, getting down this causal chain for them to get anywhere close to being able to show that they were actually damaged is a bridge too far. And I don't think that, and I think although the district court didn't precisely go through that extensive of an analysis, both the Hong Kong defendants and the domestic California defendants make a list of these elements, make a list of this causal chain. And it's not, and the plaintiffs don't dispute that. They haven't tussled with us or wrangled with our version of what they would need to do to ultimately be able to collect on their judgments. This seems to me to have something to do with whether they can prove an injury ultimately that was caused, which is different, I think, from an approximate cause problem. I mean, not being able to prove your claim because you can't prove that the defendant caused you an injury is different from proving that, well, yes, you've been causing an injury, but this is not the proximate cause, if you see what I mean. It's a chain of, so I mean, how is the Anza case, for instance, relevant in this kind of situation? Anza, I don't think, I mean, Anza, you have the state of New York that was unable to collect on sales tax.  And you've got a definitive, you have a definitive victim in that case where the petitioners in that case were merely market competitors. I'm sorry, were what? Were merely market competitors who operated across town with their own stores and through this extended causal chain of, well, because they didn't pay sales tax, they were able to charge less. They made more money. They could open a new store. They were more competitive. And that cost us business. And so therefore, due to their fraud in not paying the sales tax to the state of New York or the city of New York, that has caused us damage. In this case, the direct victim is the United States, is U.S. Customs. And so... Well, that was my initial question. Would there not be an initial claim by the United States? Correct. And of course, like Anza, it's not, the causes of action that would be pursued would not be the, you know, in Anza, the collection of the unpaid sales taxes or the recovery for the... That's a separate injury. Is that what you're saying?  And similarly here, the United States injury would be the fraud allegedly perpetrated on the United States for the false. Counsel, what do we do with the fact that on the motion to dismiss, the district court dismissed what I'll call as theories of RICO liability as opposed to the counts? I think both my colleagues have touched on this. What's your view on where does that leave us at this point? Because the district court seemed to, on summary judgment, rely on that limiting principle it had relied on in the motion to dismiss. I mean, how do I look at that at this point? In my view, there's this, you know, a sort of standard rule of pleading where it doesn't really matter how you caption or how you build out your pleading. You know, well-organized pleadings often have count one with the statute or the claim followed by the facts count two, yada, yada, yada. That they didn't do it in this case doesn't mean that those aren't separate claims. And that they were dismissed at the motion to dismiss stage means that they were dismissed. Now, if they later came to develop evidence through discovery that would then support those claims, they either needed to file a motion to reconsider that initial grant of motion to dismiss or they needed to move to amend their pleadings. Going to Judge Kelly's question, I mean, was the district court on notice at all of this potential, I'll call it a potential problem. I mean, was it discussed at all at summary judgment? I can't speak, I don't know for sure. I think it's the plaintiff's prerogative that if they felt like they had developed discovery to substantiate those claims that they needed to preserve those claims. Thank you, Your Honors. Thank you.  Good morning, Your Honors. Matt Calinan from Bell and McCormick representing four of the, what we call the California defendants in this case, which would be Brian Dubinsky, Aquawood, Dollar Empire, and Michael Wu. Your Honors, as this court has previously noted as recently as 2011, RICO was a limited statute not intended to remedy all wrongs. It does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating long-term habitual criminal activity. It's Crest Construction, VDOE, 660F3, 346, and 353. In other words, RICO is not a judgment collection statute, and it is not intended to reward inactive plaintiffs who hold judgments and fail to take steps to enforce their judgments by later granting them trouble damages and tripling those judgments. And despite these limitations and after not participating in a meaningful judgment collection efforts, plaintiffs paint a picture of an alleged judgment evasion scheme that ignores any type of direct legal argument. It's not succinct. The injury isn't direct. It reads like a conspiracy novel. This conspiracy novel approach is what dooms plaintiff's case. The district court, Judge Abengor, was able to see through that. She ignored the noise. She distilled the case down to its core. She went beyond the plaintiff's unsupported and unsighted allegations. She combed the record, even where she didn't need to, and she stated very appropriately, the record is large but lacking. That's also what is present in front of you all today. We have a large record, but it remains lacking. At the summary judgment stage, plaintiffs, according to Judge Abengor, present no evidence tending to show a link between what they might have been able to levy upon and the fraudulent customs forms. Plaintiffs, quote, could have tried to seize. That is the plaintiff's words, which demonstrates the hypothetical or speculative nature here. And what Judge Abengor said very appropriately, in line with Holmes, Anza, Hemigroup, Horn, multi-step hypothetical and ancillary proceedings involving speculation and uncertainty are exactly the type of indirect theories of harm the Supreme Court excluded from Rigo. If plaintiffs knew who actually those toys were going to, why couldn't they have just, they could have seized, gotten some kind of court order to seize those goods for execution of their judgment? Your Honor, I think you presuppose something with that hypothetical. And what I think we're missing, right, is you said if they knew who that was, they could have seized. Well, they can actually only seize items from judgment debtors. So if it turned out that those toys were not owned by any judgment debtors. So who are the judgment debtors left here? Who's at issue? Sure. The only judgment debtor that remains active is Aquawood LLC. And so the other ones are Manley Toy Direct, Toy Network LLC, AW Computer Holdings, and SLB Toys. All of them are gone. And in fact, one of the alleged judgment enforcement efforts was to bring an alter ego claim against the alleged successor, is what the plaintiffs call MGS, and attempt to seek alter ego liability or to pierce the corporate veil against vis-a-vis Manley Toy Direct and Toy Network. But plaintiffs make a big deal of that in their briefing. But what they leave out is just last month, they dismissed their case. They completely dismissed their case, and there are no fraudulent transfer claims going any longer. The alleged MGS, excuse me. I'm sorry. They dismissed their case. There was a state court case brought against MGS in which the plaintiffs tried to allege alter ego or successor liability. And they would have, had they succeeded on that case, perhaps they could have collected from MGS. Wasn't there one brought here in this case as well? An alter ego? Your Honor, there was a flurry of alter ego claims. And effectively, plaintiffs said, all parties are alter egos of all parties. They failed to demonstrate ownership. And that was granted at the motion to dismiss stage. That was never appealed. That was never reconsidered. So are any of those theories still alive in the case after the dismissal at the motion to dismiss stage of that theory? Maybe that's sort of an appendage to some of the questions that we've been asking previously. Correct, Your Honor. And that's exactly the point. And what Mr. Curry was saying, for these plaintiffs to collect, they would have had to, one, look at the false customs or look at the customs forms. Two, determine who owned the products. Three, presumably file some type of alter ego or other lawsuit to demonstrate that whoever the owner of the products was, was an alter ego or received items from one of the judgment debtors. They would have had to succeed on that claim. Then they would have had to go through the actual process of seizing the items, storing the items, auctioning the items, selling the items. So in your view, the alter ego theory, at least plaintiff's theory, at least as it relates to the customs forms, is still alive even post motion to dismiss stage? Because there's that freestanding claim. And I'm trying to figure out how that does or does not permeate the plaintiff's theories on their RICO. In your honor, I can't tell you for certain, and I apologize. I believe there could be or could have been other alter ego or fraudulent transfer type of claims brought by these plaintiffs back in 2016, 2017. And they failed to do it. In fact, they failed to domesticate their judgment in California against the only remaining judgment debtor, Aquawood. And it's interesting because, in fact, they state, and this is page two of their reply brief. They state, your honors, we don't need to show you. We do not need to specify precisely how we would have enforced our judgment absent the judgment evasion scheme. So plaintiff's argument here is not only that they don't have to show proximate cause. They say, we don't even have to show but for cause in this case. Because a judgment evasion scheme exists. So I do want to take a step back and answer some of the questions that your honors had. So your honor, Judge Kelly, I believe you asked something akin to, or I'm sorry. Someone asked something about the value being in here and whether that is steps removed. Well, under Gomez v. Wells Fargo, one of the items in RICO is that a RICO plaintiff must make a showing of injury which requires proof of concrete financial loss and not mere injury to a valuable intangible property interest. So if, for example, plaintiffs were able to collect these items, were able to auction them, but the cost to do that actually outweighed what they obtained, that's not a RICO injury. It is not a RICO injury under Eighth Circuit law. With respect to Mr. Weisbrod's arguments about homes, I believe Mr. Weisbrod overlooks that not every consideration from homes has to be met. It's merely one of the considerations from homes has to be met. And Judge Arnold, you asked my colleague, Mr. Curry, about the Anza case. And in fact, in the Anza case, the court specifically found that Anza, there was not an issue about, quote unquote, double recovery here. But the problem was, is that a court considering the claim would need to begin by calculating the portion of nationals, that's the plaintiff in Anza, price dropped attributable to the alleged pattern of racketeering activity. It next would have to calculate the portion of ideals lost sales attributable to the relevant part of the price drop. The element of proximate causation recognized in homes is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. So we've heard a lot about what I will say is repackaged words for foreseeability. But the Supreme Court, approximately a year ago, a year ago and two weeks, said directness is what matters. Foreseeability does not cut it. So intention, foreseeability does not matter here. And the last comment that I will make with my last few seconds here is the Newton v. Tyson Foods case is exactly, it's pretty on point here. What happens there is there's some poultry producers that, they were bribing USDA. They weren't subject to certain items. And the court said, the lower price of poultry may have persuaded consumers to eat more poultry and less beef. This would likely lower the beef processor's demand for cattle. This would reduce cattle sales to packers and cattle prices paid to producers. The mere recitation of this chain of causation led by plaintiffs is perhaps the best explanation of why they do not have standing in this case. We have a far too attenuated string here. Thank you, Counsel. Your Honor, if defendants were right, and if Judge Ebinger were right, then Hondin was wrong and Gick was wrong. And I'm sorry, and what? And Gick, the Second Circuit case and Gick. Those were wrong. If Judge Ebinger were right and the defendants were right, then the Supreme Court's decision in Bridge was wrong. Now, let me emphasize something about this idea that foreseeability doesn't matter, which you just heard Mr. Kellenan say. What the Supreme Court said in Medical Marijuana v. Horn in 2025 was, we have adopted a contextual fact-intensive inquiry that accounts for the nature of the racketeering activity that directly caused it and the injurious aims and effects of that activity. Now, foreseeability is not the only factor. It may not even be the most important factor. But it is an important factor and especially the purpose of this scheme is an important factor. And here the purpose was to hurt judgment creditors. So all of these things, even if they involve multiple layers, they are relevant to the fact that the targets of the harm was the women is relevant and it shows that they have established directness. I thought that notion was rejected by the Supreme Court, although Justice Thomas dissented and took your view of it. In a later case, I think Justice Breyer sort of tried to resurrect that idea in another dissent and the court said, we've already dealt with that. Judge Ebinger said what Your Honor just said and it's not correct. If you look at medical marijuana, you will see that the purpose of the harm is relevant. The purpose of the crimes is relevant. It's not dispositive. But it is relevant. The other key thing to keep in mind as you distinguish Bridge on the one hand and Holmes on the other is that here the parties that we're supposed to pay were in the enterprise. That is very different from Holmes and Onza and all these other cases where there are customers who are outside of the enterprise who did not conspire with the enterprise, whose activities caused an injury. Now, there's another key point here that I need to make, which is that a lot of evidence was destroyed here. The Eighth Circuit has been crystal clear that you don't need a sanction, a discovery order or sanction to make an adverse inference. Juries can do that. And here where Aquawood and all these other companies just didn't produce evidence, all of MTD and Toy Network's documents, all of them were not produced. Toth testified that all of the property of MTD and Toy Network was transferred over to MGS, which was controlled by Aquawood, disappeared. They're imposing a burden that we cannot possibly meet because they destroyed the evidence and that's not fair. Another key point to make is this isn't just about seizing boxes of toys. It's also about seizing revenue streams. It's about transferring entire businesses and their accounts. And following the toys enables you to follow the commissions. But if you don't know what toys are going and coming, you can't follow the commissions. We could have seized those as well. It's not just that there was a box in a warehouse and we didn't know who owned it or when it arrived. Is that one more step, though? If you're going from the toys, seizing of the toys, to the commissions for the toys, does that sort of walk yourself into the defendant's argument about the directness? I don't believe so, Your Honor. The whole point is that Aquawood was involved in all of these sales. That's how it gets paid. If Aquawood is hiding when and how it's getting paid, that is directly injuring judgment, credit, and trust. And that's why we don't trust our creditors like our clients. Now, this is a very important public policy issue. If defendants' proximate cause arguments were right, that would largely foreclose RICO claims based on complex judgment evasion, which is not how RICO is supposed to work. And we know that both from decades of case law, including Hondin and Gick in the Second Circuit, and other cases. We know it from Supreme Court precedent. And we know it from the predicate acts that are listed in RICO. Bankruptcy fraud is listed. Money laundering is listed. And the reason for that is that Congress understood that complex judgment evasion is part of what criminal enterprises do. And you have to be able to fight it, and civil plaintiffs are allowed to fight it, too. If the district court is affirmed, parties that lose judgments will have a roadmap on how to evade judgments. All they have to do is not pay, shut down the company, transfer the business to a new company, destroy the documents, refuse to answer questions about how their companies work, and then say, ha ha, they haven't met the causal requirements. A judgment creditor won't be able to collect using ordinary means. We showed that. Paula Roby's expert report established that. All of the several experts talked about how this impeded judgment enforcement and increased costs, which is enough under Hundin to survive summary judgment. But the judgment creditor not only would be foreclosed from using regular judgment enforcement mechanisms, which again is enough under Hundin, the judgment enforcement creditor wouldn't be able to go around or past the normal means, wouldn't be able to attack the criminal enterprise, because the evasions included many steps. This is totally different from the steel sales case, totally different from the tax case. The targets were the women. That is a legitimate focus. They are the main victims. Thank you, Your Honor. Thank you, counsel. Thank you to all counsel for your argument and your briefing in this case. We will take the matter under advisement. Thank you.